UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO GRAPHIC ARTS HEALTH & WELFARE PLAN, a multiemployer plan, by ROBERT MILLER AND JAMES MADDEN, in their capacity as Trustees. ) ) ) ) ) | | |
| Plaintiffs, ) ) | | |
| vs. ) ) | 07 C 436 | |
| ROLANDO CASTANEDA, SR., individually and as "Next Friend" to Roland Castaneda, Jr., and ROLANDO CASTANEDA, JR., ) ) ) ) ) | | |
| Defendants. ) | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiffs Chicago Graphic Arts Health & Welfare Plan, Robert Miller, and James Madden (collectively referred to as "the Plan") for attorneys' fees and nontaxable expenses. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This case involved a dispute between the Plan and Defendants Rolando Castaneda, Sr. (Rolando Sr.) and Rolando Castaneda, Jr. ("Rolando Jr."). In late July 2003, Rolando Jr. received medical treatment that was paid for by the Plan. His father, Rolando Sr., was a participant in the Plan at that time. The Castanedas brought a state-

court action against the parties responsible for causing Rolando Jr.'s injuries and eventually settled for $137,500. The Plan asserted a subrogation claim for the amounts it expended for Rolando Jr.'s medical care.

The Plan filed a motion for summary judgment, which was granted after it went unanswered by the Castanedas. The amount awarded in damages, $8,379.48, was promptly paid to the Plan. Shortly after the ruling issued, the Plan requested an award of costs consisting of the $350 filing fee for the case; this request was also granted. Now, pursuant to 29 U.S.C. § 1132(g)(1), the Plan requests attorneys' fees and nontaxable expenses totalling $12,424.93 claimed to have been incurred in the prosecution of this suit.

## LEGAL STANDARD

Under the so-called "American rule," a party to a lawsuit pays its own attorneys' fees absent some sort of authority to shift the burden, such as a statute, a rule of procedure, or prior agreement of the parties. *See*, *e.g.*, 42 U.S.C. § 1988; *West Lafayette Corp. v. Taft Contracting Co., Inc.*, 178 F.3d 840, 842 (7th Cir. 1999); Fed. R. Civ. Proc. 37(a)(4)(A). The Employee Retirement Income Security Act ("ERISA") provides such authority in the form of 29 U.S.C. § 1132(g)(1), which states that a court may award reasonable attorneys' fees and costs to a prevailing party in an action by a plan fiduciary.

With these principles in mind, we turn to the Plan's motion.

## DISCUSSION

The grant of summary judgment in this case conferred prevailing party status on the Plan. In the Seventh Circuit, a request from a prevailing party in an ERISA case

can be examined under either of two methods. *See Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). The first is a five-factor test, which considers the degree to which the losing party demonstrated bad faith; 2) the losing party's ability to pay an award of fees; 3) whether an award of fees would discourage future similar behavior by others; 4) how much the members of the pension plan as a whole benefitted from the action; and 5) the comparative merit of the positions advanced by the parties. *See id.* The second inquires whether the position taken by the losing party was substantially justified. *Id.*

We begin by examining whether the Castanedas demonstrated bad faith. Prior to the filing of the complaint in this case, they took the position that Illinois law precluded recovery because of the anti-subrogation provisions of the Family Expense Act. However, the law upon which they based this assertion applies to insured plans, not self-funded plans such as the one in this case, which are exempt from state regulation under 29 U.S.C. § 1144(b)(2)(B). *See, e.g.*, *Estate of Lake v. Marten*, 946 F. Supp. 605, 608-10 (N.D. Ill. 1996); *Health Cost Controls v. Rogers*, 909 F. Supp. 537, 542-44 (N.D. Ill. 1994). The legal underpinning of their resistance to this suit has been consistently rejected in this district for over a decade, and there is no argument within their submissions that they sought, in good faith, to change the law with respect to this kind of case. Despite having been informed of this line of case law before the action commenced, the Castanedas persisted in their course of action up to and including final judgment pursuant to a motion that they did not see fit to answer. Though we hesitate to paint this as unabashed harassment, neither is it well-founded

enough to tip the first factor away from the Plan. The fifth factor of the first test, which looks to the relative merits of each party's position, is similarly impacted by the Castanedas' actions on this score.

As to the second factor, the Castanedas contend that they are unable to pay any award of fees because they must petition the state probate court to release funds held in trust for Rolando Jr.'s benefit. Though it presents a hurdle, this fact does not translate into an inability to pay a fee award. As a result, this factor weighs somewhat in the Plan's favor.

Moving to the third point, the deterrent effect presented by an award of fees in this case is slight; we are not persuaded that the facts of this case will be oft-repeated, particularly the Castanedas' resistance to paying the lien amount when faced with the case law the Plan supplied. However, there is some chance that an award would cause second thoughts in those contemplating a recalcitrant approach.

Finally, on the fourth factor, funds that could have been used for the benefit of all Plan participants were instead expended in prosecuting this case. However, the total claimed injury (medical expenses paid plus fees and costs expended) is less than $25,000, which is not a massive sum. Consequently, this factor is in the Plan's favor, but only slightly so.

Putting all of these factors together, we conclude that the Castanedas were not substantially justified in pursuing their chosen course in this case. As a result, we conclude that an award of reasonable attorneys' fees under 29 U.S.C. § 1132(g)(1) is warranted and turn to a consideration of the reasonableness of the amount sought.

As the party seeking an award of fees, the Plan bears the burden of proving both the reasonableness of the number of hours worked and of the rates claimed. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). In support of the reasonableness of the hourly rates claimed, the Plan relies upon the affidavit of Philip O'Brien, a Wisconsin attorney. An attorney's affidavit attesting that his or her rates are fair and reasonable is insufficient by itself to satisfy the burden of showing that the rate is reasonable. *Id.* at 556. However, the Plan's chances of prevailing are salvaged by the uncontroverted assertion that the Plan paid fees totalling $11,800.67. That the client considered the attorneys' work to be worth that amount constitutes the best evidence of the market value of the services rendered. *See Stark v. PPM America, Inc.*, 354 F.3d 666, 675 (7th Cir. 2004). Once a party requesting fees presents evidence of the market rate for its services, the burden shifts to the party opposing the award to show that the rate should be lowered. *Id.* at 674-75. The Castanedas do not provide any argument or evidence that would support lowering the rates of the Plan's attorneys. Accordingly, we conclude that the rates charged were reasonable.

With respect to the number of hours worked, the Plan has supplied its billing records, but few entries give any description of the services rendered. Descriptions that are provided include a telephone call regarding a discovery conference, e-filing documents, identifying tasks related to the motion for summary judgment, and conducting computerized research. Each of these tasks is a reasonable endeavor for an attorney to perform. A comparison of the court appearances listed in the case docket to the bills for local counsel reveals fees incurred on two occasions when local

counsel appeared before this court on business related to this case. Finally, 18.5 attorney hours were expended during the time allotted for summary judgment briefing; this is a reasonable amount of time for a motion of this type. Because the Plan has not provided us any means of assessing the reasonableness of the remaining amounts, the request to award them is denied.

Combining the hours that were identifiably spent in reasonable pursuit of this litigation with the rates discussed yields a total of $5,668.50, and we find that an award of that amount is appropriate. The additional nontaxable expenses sought by the Plan should have been brought in conjunction with the previously considered (and awarded) bill of costs. Because they were not, we will not allow the Plan to take a second shot at them now.

## CONCLUSION

Based on the foregoing, the motion for attorneys' fees is granted in part and denied in part. Plaintiffs are awarded $5,668.50 in attorneys' fees.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   February 7, 2008